U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 20 2021
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| VICTORIA GIBSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:20-CV-046-A |
| | § | |
| HOSHIZAKI AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, Hoshizaki America, Inc., for summary judgment. The court, having considered the motion, the response of plaintiff, Victoria Gibson, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

On January 10, 2020, plaintiff filed her complaint in this action. Doc.[1] 1. She alleges:

She worked for defendant for 13 years with good reviews. Her supervisor was Greg Cavender ("Cavender"). Plaintiff had a physical altercation with Cavender in 2012 and her pay raises stopped increasing beyond the standard 3% and her base bonus

---

[1] The "Doc. ___" reference is to the number of the item on the docket in this action.

remained the same. She was wrongfully terminated on March 8, 2019, while she was on vacation. Doc. 1 at 2, ¶ 5.

Plaintiff asserts claims for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA"). She also asserts a claim for retaliation.

II.

Grounds of the Motion

Defendant maintains that plaintiff cannot establish a prima facie case of sex or age discrimination or retaliation. Nor can she overcome defendant's legitimate non-discriminatory reason for terminating her employment.[2]

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out

---

[2] Defendant also says, and has shown, that plaintiff cannot establish a claim for hostile work environment, but she did not pleaded such a cause of action.

2

to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

3

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 247-48. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). She cannot defeat a motion for summary judgment by submitting an affidavit or declaration that contradicts, without explanation, her earlier sworn deposition. Cleveland v. Policy Mgmt. Sys. Corp.,

4

526 U.S. 795, 806 (1999); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); Albertson, 749 F.2d at 228. Nor can she rely on conclusory allegations unsupported by concrete and particular facts. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995).

IV.

Undisputed Facts[3]

The record establishes the following:

Defendant is engaged in the design, manufacturing, marketing, sale, distribution, and servicing of equipment for the foodservice industry. Doc. 24 at 322. It is headquartered in Georgia and operates five distribution centers throughout the United States, including its South Central Distribution Center ("SCDC") in Fort Worth, Texas. Id. at 321-22. Throughout plaintiff's employment, Cavender (male, DOB 1956) was SCDC vice president. Id. at 321.

Plaintiff was born in 1971. Id. at 319. She applied for a service technician position with defendant in 2006. Id. at 190. Because she needed to make more money than the position would provide, Cavender suggested that she go into sales. Id. at 322.

---

[3] The court is giving plaintiff's evidence the weight it deserves. Her declarations are conclusory and contradict without explanation her sworn deposition testimony. Plaintiff's deposition performance can only be described as "Clintonesque." She repeatedly asked for definitions and explanations of simple questions, failed to answer questions posed, and claimed not to recall matters that simply could not have been forgotten by any reasonable person.

She had no prior sales experience. Id. at 192, 194. Cavender hired plaintiff as a salesperson at a starting salary of $40,000 with a $6,000 bonus opportunity, promising to catch her up to other salespeople as her performance warranted.[4] Id. at 322, 48-49. Plaintiff was hired to replace another woman Cavender had hired. Id. at 322.

When she was hired, plaintiff received a copy of defendant's Employee Summary of Policies, Practices and Procedures manual. Id. at 30, 195. Defendant's policies prohibited sex and age discrimination and required employees who felt that they had been subjected to harassment or unwanted attention to immediately report the complaint. Id. at 200.

Cavender spent a lot of time training and mentoring plaintiff. Id. at 323. He would go on a half-hour sales call with her and then spend an hour or more afterwards in the parking lot discussing what seemed to work and what could be done better. Id. In the "comments" section of her 2006 annual evaluation, plaintiff wrote, "I have enjoyed my career at Hoshizaki and I am looking forward to a very long career at Hoshizaki. [Cavender] has been great to work for and an instrumental part of my success." Id. at 226. Cavender

---

[4] Defendant did not provide employees with guaranteed raises or cost of living increases. Doc. 24 at 323. It only provided merit increases that had to be earned. Any raises in excess of approximately 3% had to be approved by the compensation committee. Id.

6

recommended her for a 3% merit increase in salary. Id. at 323, 334.

At the end of 2007, Cavender recommended plaintiff for a 21.4% merit salary adjustment as part of his commitment to get her pay up to the level of other salespeople. Id. at 323, 336. At the end of 2008, Cavender recommended that plaintiff receive a 3% merit increase, an additional 7% salary adjustment, and a 25% base bonus adjustment. Id. at 323, 338. In early 2009, plaintiff's title changed from territory manager to account manager. Id. at 341. At the end of 2009, Cavender recommended plaintiff for a 3% merit increase. Id. at 324, 343. At the end of 2010, Cavender requested a 4% merit increase and an additional 3% salary adjustment for plaintiff to help get her pay up to the level of other salespeople. Id. at 324, 345. In early 2012, Cavender recommended plaintiff for a 4% merit increase and a 3.23% salary adjustment, id. at 324, 351, which was approved. Id. at 353. At that point, Cavender believed that plaintiff's salary and bonus opportunity was commensurate with other account managers and that she was no longer underpaid. Id. at 325.

In late 2012, Cavender and plaintiff were driving back from Amarillo on a business trip. Id. at 108, 326. Plaintiff was driving and Cavender was in the passenger seat. Id. at 108. At

7

one point, plaintiff was discussing her belief that inside sales representatives acted as if they were managers and made it hard for account managers like her to get things done in the office. Id. at 111. Plaintiff talks with her hands and Cavender felt that plaintiff was pointing her right index finger into his face. Id. at 109, 326-27. He asked her several times to stop and when she failed to do so, he reached out to grab plaintiff's wrist, but inadvertently grabbed her index finger instead. Id. at 326-27. Plaintiff threatened to throw Cavender out of the car in the middle of nowhere. Id. at 110, 327. He apologized and they continued the trip for another three hours without incident. Id. at 110-11, 327. Upon return, Cavender reported the incident to human resources. Id. at 327. Plaintiff never said a word about the incident until March of 2018. Id. at 107.

In January 2013, Cavender recommended that plaintiff receive a 3% merit increase for 2013. Doc. 24 at 325, 355. She received an additional .46% increase in mid-2013. Id. at 325, 357. Cavender recommended that plaintiff receive a 3.35% merit increase for 2014. Id. at 325, 359. He recommended that she receive a 3% merit increase for 2015. Id. at 325, 361. He recommended that she receive a 3% merit increase for 2016. Id. at 325, 363. He recommended that she receive a 3.2% merit increase for 2017. Id. at 326, 365. He also lobbied on

8

plaintiff's behalf to get her selected for Penguin Club for 2016 when it appeared that she would miss out on the annual recognition for salespeople meeting certain goals. Id. at 90-92, 251, 258, 325-26. Plaintiff appreciated Cavender's help in getting the award. Id. at 251, 258.

Cavender hired Kelly Marincik ("Marincik") as an account manager in April 2005. She had significant prior sales experience in the industry and a bachelor's degree in business and marketing. Id. at 329-30, 379. Marincik was born in 1978. Id. at 379. Cavender promoted her to sales manager in April 2017. Id. at 329-30, 379-80. Plaintiff reported to Marincik. Id. at 94. In 2017, plaintiff's overall evaluation rating was "successfully met expectations." Id. at 267. Plaintiff was not pleased with the review. Id. at 96. During her meeting with Marincik, plaintiff rolled up the review and was smacking it into her other hand. Id. at 382. She pointed her finger and threatened Marincik: "Don't ever come after me, my family or my livelihood or I will ruin you." Id.

On January 17, 2018, plaintiff sent a list of 2,500 contacts from her work email to her personal email. Id. at 97, 268. On March 15, 2018, Marincik discovered that plaintiff was conducting business as a realtor, using her cell number that she used for defendant as her contact number. Id. at 382, 390.

9

Marincik printed the bio from the realty company's website and forwarded it to Cavender. Id. at 326, 367, 283, 390. Both were concerned that the outside job might distract plaintiff from her work for defendant.[5] Id. 326, 382. Cavender called plaintiff to discuss the matter. Id. at 4-5, 326. Plaintiff got very defensive and threatened that if he reported her to company headquarters, she would "burn" him. Id. at 326. Cavender assumed she was referring to the incident in 2012, so he told her that he had reported that incident to human resources when it happened. Id. at 100-01, 326. On March 19, 2018, plaintiff contacted Ronetta Barr ("Barr"), compensation manager, and reported the 2012 incident. Id. at 99-100, 269-70. Plaintiff told Barr that Cavender had physically assaulted her in 2012 and that he began retaliating against her afterwards and that her pay raises had basically come to a halt other than the bare minimum. Id. at 101. She characterized the incident as a "turning point." Id. at 101-02. Barr spoke with Cavender to get the details and inquire about witnesses. Id. at 327. She later told Cavender that she could not find any basis for retaliation and that no further action would be taken. Id.

In May 2018, customer Dustin Kennedy with Bargreen

---

[5] Plaintiff now admits that outside work could be a distraction. Doc. 24 at 5-8.

Ellingson called Cavender to complain that plaintiff had failed to communicate to him a model change and price increase. Id. at 117-18, 278, 327. Cavender asked Marincik to follow up. Id. at 327, 382. Marincik spoke with Kennedy, then called plaintiff to ask if she had any evidence rebutting what Kennedy had told her. Plaintiff forwarded an email reflecting that she had given notice of the model change but not the price increase. Id. at 382-83. Marincik prepared a disciplinary action form for plaintiff for "lack of communication with dealers in regards to new product releases and updates to unit design and product pricing." Id. at 277, 383. Marincik called plaintiff to tell her that she would need to complete a coaching plan to improve customer communications. Id. at 383. Plaintiff emailed Barr, copying Karen Lehto, head of human resources, claiming that the disciplinary action was retaliation for her call to Barr in March. Id. at 118, 282. Plaintiff subsequently spoke to Sara Higgins, human resources manager, who conducted an investigation and informed plaintiff that the coaching plan was standard that that she should sign it. Id. at 284, 286. Ultimately, plaintiff signed the form. Id. at 128, 294. Plaintiff understood she was being counseled on lack of communication with dealers regarding new product releases and updates to unit design and product pricing and that it was part of her coaching plan to inform

11

customers of price changes. Id. at 133-34.

Plaintiff broke her ankle in June 2018. Id. at 135, 296-97. She was in a boot for approximately one month and could not drive to visit customers. Id. at 135. She was placed on short-term disability and received 100% of her regular pay. Id. at 137, 298, 383-84. She returned to work at the end of July 2018. Id. at 299.

Marincik met with plaintiff on August 2, 2018, to discuss the coaching plan. Id. at 139, 300-01, 302-03, 384. They met again on September 24, 2018, to conduct a six-week review of progress. Id. at 140, 304, 384. On November 6, 2018, Marincik informed plaintiff that the coaching plan would continue. Id. at 305, 384.

In 2018, plaintiff missed her sales quota by a small amount. Id. at 310. Her evaluation rating was "met most expectations." Id. at 313.

In March 2019, customer Bill Carter with Texas Metal called Marincik to complain that plaintiff had failed to communicate a price increase. Id. at 384. Marincik called plaintiff to ask if she had any written communications with the client regarding the price increase. Id. at 151, 384. Plaintiff told Marincik, "Don't ever call me on vacation. How dare you disturb me," and hung up. Id. 384. Plaintiff never provided proof that she had conveyed

12

the price increase. Id. at 384-85. As a result, defendant had to honor the old price, costing it approximately $500,000.00. Id. at 385. Marincik viewed the failure to inform the customer of the price increase as a violation of the coaching plan and decided to terminate plaintiff. Id. Cavender agreed, id. at 328, as did the human resources manager. Id. at 385, 420. When plaintiff learned of her termination, she told defendant's human resources manager, among other things, that she had never worked for such a horrible company, that she was glad she was terminated because she was going to resign anyway, and that now she could draw unemployment. Id. at 437. Plaintiff was replaced by another female. Id. at 377, 385.

V.

Analysis

To establish a prima facie claim for discrimination under Title VII, plaintiff must show that: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees. Culwell v. City of Fort Worth, 468 F.3d 868, 873 (5th Cir. 2006). An "adverse action" includes only ultimate employment decisions, such as hiring, granting leave, discharging,

promoting, or compensating. McCoy v. City of Shreveport, 493 F.3d 551, 560 (5th Cir. 2007). To be "similarly situated," the circumstances of plaintiff and her comparator must be more than similar; they must be "nearly identical" from the perspective of their employer at the time of the relevant employment decision. Berquist v. Washington Mut. Bank, 500 F.3d 344, 353-54 (5th Cir. 2007); Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004). If the defendant shows a legitimate, nondiscriminatory reason for its action, plaintiff must point to disputed facts from which a reasonable factfinder could conclude that defendant's reason is pretext for discrimination. Culwell, 468 F.3d at 873.

The first three elements of the prima facie case for age and gender discrimination are the same. Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995). The fourth element is similar, but plaintiff must show that she was replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of her age.[6] Id.

To establish a prima facie case of retaliation, plaintiff must show that she participated in an activity protected by

---

[6] Plaintiff argues that she need only show that age was a motivating factor. Her argument is based on an incorrect reading of Babb v. Wilkie, 140 S. Ct. 1168 (2020), which concerns federal sector employees. As Babb notes, private employers are held to the "but for" standard. 140 S. Ct. at 1175-76. But, even if plaintiff were correct, she has no probative evidence that age played any role in any action taken against her.

Title VII or the ADEA, defendant took an adverse employment action against her, and a causal connection exists between the protected activity and the adverse employment action. McCoy, 492 F.3d at 556-57. Protected activity means opposing any practice rendered unlawful by Title VII or the ADEA, and includes making a charge, testifying, assisting, or participating in any investigation, hearing, or proceeding thereunder. 42 U.S.C. § 200e-3(a); 29 U.S.C. § 623(d); Ireland v. American Airlines, Inc., No. 4:18-CV-208-A, 2019 WL 2269931, at *5 (N.D. Tex. May 28, 2019)(citing Lopez v. Kempthorne, 684 F. Supp. 2d 827, 862 (S.D. Tex. 2010)).

As defendant explains, there are numerous reasons that plaintiff cannot establish a prima facie case of sex or age discrimination. Doc. 23 at 17-38. The court need not discuss these in detail, however, because even assuming plaintiff could establish a prima facie case, she is not able to overcome defendant's legitimate non-discriminatory reason for terminating her employment.[7] That is, plaintiff was terminated for twice

---

[7] That plaintiff was terminated is the only adverse employment action she is able to establish. For a discrimination claim, adverse action includes only ultimate employment decisions. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006); McCoy, 492 F.3d at 560. Failure to investigate plaintiff's 2018 report of Cavender's 2012 "assault" to plaintiff's satisfaction is not an adverse employment action. See Lamb v. City of W. Univ. Place, 172 F. Supp. 2d 827, 836-37 (S.D. Tex. 2000); Leckemby v. Greystar Mgmt. Servs., L.P., No. 1:13-CV-873-DAE, 2015 WL 3408667, at *7 (W.D. Tex. May 26, 2015); Ellis v. Crawford, No. 3:03-CV-2416-D, 2005 WL 525406, at *16 & n. 19 (N.D. Tex. Mar. 3, 2005). As for the allegation that plaintiff's compensation suffered after the incident, she has not come forward with probative summary judgment evidence to establish a genuine issue of material fact. The record establishes that plaintiff continued to receive pay adjustments. She has not shown that Cavender treated her differently from any other employee, much less one similarly situated. Instead, the record reflects that her pay was

failing to provide customers with appropriate pricing information and for costing defendant $500,000.00. Merely disputing that she failed to do so is not sufficient to show pretext. Shackleford v. Deloitte & Touch, L.L.P., 190 F.3d 398, 408 (5th Cir. 1999); Moore v. Eli Lilly & Co., 990 F.2d 812, 815 (5th Cir. 1993). Further, two of the three persons who made the decision to terminate plaintiff are women and two of the three are over age 40. See Kitchen v. BASF, 343 F. Supp. 3d 681, 693 (S.D. Tex.), adopted, 2018 WL 5723147 (S.D. Tex. Nov. 1, 2018), aff'd, 952 F.3d 247 (5th Cir. 2020); McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447, 461 (5th Cir. 2019); Kelly v. Costco Wholesale Corp., 632 F. App'x 779, 783 (5th Cir. 2015). Cavender, who hired plaintiff, was one of the three. Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997)(same actor gives rise to strong inference of nondiscrimination).

With regard to alleged retaliation, there is no evidence that plaintiff engaged in any protected activity. First of all, she never made any complaint until 6 years after any alleged bad behavior. Second, the complaint was not about sex or age discrimination, but rather that she had been physically

---

commensurate with, and exceeded as to some, the pay of other salespeople. Doc. 24 at 386.

assaulted when Cavender grabbed her finger. Doc. 24 at 101-02. See Schultze v. White, 127 F. App'x 212, 217 (7th Cir. 2005)(physical assault is not a Title VII violation); Scarborough v. Mineta, No. 3:03-CV-328-RS-EMT, 2006 WL 931859, at *12 (N.D. Fla. Apr. 10, 2006)(physical assault is not age discrimination). She testified that Cavender did not like what she was saying and grabbed her hand to make her stop talking. Doc. 24 at 111. There is no evidence that her complaint to human resources was based on discrimination. Rather, the only conclusion to be drawn is that plaintiff was trying to make something out of nothing. An informal complaint must reference a discriminatory practice to constitute protected activity. Walker v. Univ. of Tex. Med. Branch-Galveston, No. 3:17-CV-00313, 2018 WL 3850827, at *4 (S.D. Tex. July 3, 2018), adopted, 2018 WL 3844691 (S.D. Tex. Aug. 13, 2018). Doc. 24 at 167-68, 317 (EEOC advised plaintiff that the reasons for her retaliation claim were not protected activity). Her claim for retaliation fails.

VI.

Order

For the reasons discussed herein,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on her claims against defendant; and that such claims be, and

are hereby, dismissed with prejudice.

SIGNED January 20, 2021.

/s/ John McBryde
JOHN McBRYDE
United States District Judge

18